# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| WESTERN ILLINOIS CORRECTIONAL CENTER, | : | Case No. 1:22-cv-253 |
| | : | |
| Petitioner, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | Magistrate Judge Elizabeth P. Deavers |
| | : | |
| HAROLD MAY, WARDEN, TOLEDO CORRECTIONAL CENTER, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

Justin McElroy has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 5.) McElroy is in custody under the judgment of an Ohio court, but is currently incarcerated in an institution in Illinois. (Doc. 5, PageID 46-47.) The matter is before the Court for a preliminary review under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Rule 4"). McElroy has also filed a motion seeking the appointment of counsel (Doc. 2) and a motion requesting that this Court order Respondent to produce the state court record (Doc. 3).

Under Rule 4, this Court must conduct a preliminary review to determine whether "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." If it does so appear, the petition must be dismissed. *Id*. For the reasons that follow, the Undersigned **RECOMMENDS** that this Court **DISMISS** the Petition and **DENY** the pending motions as moot. The Undersigned also **RECOMMENDS** that the Court **ISSUE** a certificate of appealability.

I.      **Background**

According to the Petition, McElroy pled guilty and was convicted of drug trafficking in Hamilton County, Ohio, in August 2018. (Doc. 5 (hereinafter "Petition"), PageID 46.) For about a year, he was incarcerated at the Toledo Correctional Institution.[1] (*Id.*, PageID 47, 50.) In August 2019, McElroy was transferred to Illinois pursuant to the Interstate Correction(s) Compact[2] and processed into the Illinois Department of Correction. (*Id.*, PageID 47.) He is currently incarcerated at the Western Illinois Correctional Center. (*Id.*)

McElroy did not appeal or otherwise challenge his conviction and sentence. (Petition, PageID 46.) He likewise does not challenge his conviction and sentence in this § 2254 action, but instead asserts that "[t]his petition stems from the denial of a petition for mandamus relief filed with the Supreme Court of Ohio." (*Id.*) *See McElroy v. Chambers-Smith*, No. 2021-0807, 165 Ohio St. 3d 1529, 2022-Ohio-280, 180 N.E.3d 1148 (Feb. 9, 2022) (granting motion to dismiss mandamus action for failure to state a claim on which relief may be granted).

The mandamus action, like this action, concerned McElroy's assertion that he should be awarded sentence credit or "earned credit" for "numerous educational/rehabilitative programs" he has completed while incarcerated in Illinois. (Petition, PageID 47.) He points to Ohio Revised Code 2967.193 (discussed below) as the source of his entitlement to sentence credit.

---

[1] For this reason, McElroy names the Warden of the Toledo Correctional Institution as Respondent in this action. (Petition, PageID 50.) There is some authority for this. *See U.S. ex rel. Blair v. Rednour,* No. 11-cv-4108, 2012 WL 1280831, at *1, n.1 (N.D. Ill. Apr. 11, 2012); *see also Holder v. Curley*, 749 F. Supp. 2d 644, 644 (E.D. Mich. 2010) (concerning venue). However, the Undersigned is aware of no authority that would allow McElroy to file on behalf of the *Petitioner* named in the Petition's caption: Western Illinois Correctional Center. (Doc. 5, PageID 46.) As this may simply be an error or correctable with appropriate amendment, the Undersigned sets this issue aside for the moment.

[2] The Interstate Correction(s) Compact provides for agreements between states "to exchange and house prisoners on a reciprocal basis as needed." *Holder,* 749 F. Supp. 2d at 644 n.1 (E.D. Mich. 2010); *see also Martin v. Ohio Adult Parole Auth.*, No. 2:14-cv-0235, 2015 WL 163417, at *1 (S.D. Ohio Jan. 13, 2015) ("Ohio Revised Code § 5120.50(C)(1) provides that a state that is a signatory to the compact may make a contract with another state for prisoners to serve their sentences in that other state."). As noted, Ohio has included the Interstate Correction(s) Compact in Ohio Revised Code 5120.50. Illinois has included it in its state statutes at 730 ILCS 5/3-4-4.

(*Id.*, PageID 51.) McElroy asserts here that Ohio authorities have denied him credit solely because he is not "housed in the state of Ohio," which denies his rights to due process and equal protection as guaranteed by the Fourteenth Amendment. (*Id.*, PageID 46-48, 50.) As a remedy, McElroy asks this Court to order Respondent to award him past and future credit or to transfer him back to Ohio, or order other appropriate relief. (*Id.*, PageID 47.)

**II.     Discussion**

It "plainly appears from the petition and any attached exhibits that the [McElroy] is not entitled to relief" on his § 2254 Petition. Rule 4. This determination arises not from an examination of the merits of McElroy's argument about earning credit toward his sentence, but from the language of § 2254 as interpreted by the United States Court of Appeals for the Sixth Circuit. That Court explained, when affirming the dismissal of a similar type of claim:

> Section 2254(a) permits courts to "entertain an application for a writ of habeas corpus ... only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Most habeas cases implicate the "in custody" or "in violation of" federal law requirement by themselves. We face a different problem—a prisoner who does not purport to be in custody in violation of federal law, but <u>who is in custody, complains of an unconnected violation of federal law, and claims a right to proceed all the same under § 2254(a)</u>.
>
> The words "in custody" convey any conditions that "significantly restrain" a petitioner's "liberty," *Jones v. Cunningham*, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), such as imprisonment, parole restrictions, or consecutive sentences. *Peyton v. Rowe*, 391 U.S. 54, 64-65, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968) (physical restraint and consecutive sentences); *Jones*, 371 U.S. at 242–43, 83 S.Ct. 373 (parole). The phrase "in violation of the Constitution or laws or treaties of the United States" has an equally straightforward meaning. A petitioner must claim that his custody violates federal law, not state law, not some other source of law. *Wilson v. Corcoran*, 562 U.S. 1, 5, 131 S.Ct. 13, 178 L.Ed.2d 276 (2010) (per curiam).
>
> [Petitioner] satisfies each of these requirements in isolation. He is "in custody" because he is serving a life sentence. And his petition rests on a violation of federal law because he claims that Ohio violated his Fourteenth Amendment due process rights. <u>But he has not tied the two together</u>. [Petitioner] does not contend

3

> that he is in custody in violation of federal law—in other words, that he is in custody <u>due to</u> a violation of federal law. At its core, [the] petition alleges only that he has been deprived of an accurate parole record in violation of federal law. That kind of claim falls outside § 2254(a)'s domain.

*Bailey v. Wainwright*, 951 F.3d 343, 346 (6th Cir. Feb. 20, 2020), *cert. denied*, 141 S. Ct. 316 (2020) (emphasis added).

An analogous situation is presented here. McElroy has filed a § 2254 Petition. (Doc. 5, PageID 46.) He asserts he is "in custody," and likewise alleges that an unconnected violation of his Fourteenth Amendment rights has occurred. (Petition, PageID 46-48.) "But he has not tied the two together." *Bailey*, 951 F.3d at 346. That is, he has not alleged that he is in custody due to or *because of* the rights violation. Rather, McElroy is "in custody" because in 2018, he pled guilty, was convicted, and was sentenced to an eight-year prison term. (Petition, PageID 46.) He does not claim that the state criminal court process violated his rights; the alleged rights violation occurred thereafter.

The *Bailey* Court noted that the petitioner in that case had not explained how his arguments would cause him to be released "or otherwise change his custody status." *Bailey*, 951 F.3d at 346. This is also true here. McElroy does not allege that he should be released or explain how his custody status would change if his arguments were accepted. Notably, McElroy provides no information about the programs in which he has participated, when he participated in them, or how much credit he should have earned. And, as discussed below, a brief examination of the program he relies on suggests some reasons he has not been given the credits.

Ohio Revised Code 2967.193 is entitled "Deduction from sentence for participation in certain programs; procedures[.]" In general, and with several exceptions and limitations, this statute provides that:

4

> a person confined in a state correctional institution . . . may provisionally earn one day or five days of credit . . . toward satisfaction of the person's stated prison term, . . . for each completed month during which the person, if confined in a state correctional institution, productively participates in an education program, vocational training, employment in prison industries, treatment for substance abuse, or any other constructive program developed by the department with specific standards for performance by prisoners . . . [.]

Ohio Revised Code 2967.193(A)(1). The parallel Ohio Administrative Code Provision describes the program in this way:

> Except as otherwise provided in this rule, any person confined in a state correctional institution may earn credit as a deduction from the person's sentence for each full month of productive participation in any academic or vocational program, prison industry, or alcohol and drug treatment, unit management program, or mental health program specifically approved by the director.

Ohio Admin. Code 5120-2-06(A).

Among the many moving parts in the statute is its application to persons confined in a "state correctional institution." That term is specifically defined in Chapter 2967 of the Ohio Revised Code:

> As used in this chapter:
>
> (A)  "State correctional institution" includes any institution or facility that is operated by the department of rehabilitation and correction and that is used for the custody, care, or treatment of criminal, delinquent, or psychologically or psychiatrically disturbed offenders.

Ohio Revised Code 2967.01(A). The "department of rehabilitation and correction" referred to in the Ohio Revised Code likely means the *Ohio* Department of Rehabilitation and Correction ("ODRC"). *See* Chapter 5120 of the Ohio Revised Code (concerning the "Department of Rehabilitation and Correction); *see also* "About the ODRC," available at https://drc.ohio.gov/about (accessed June 22, 2022) ("The Ohio Department of Rehabilitation and Correction was established under House Bill 494. Its responsibilities are defined in Ohio Revised Code 5120.").

5

According to the Complaint, the Western Illinois Correctional Center is part of the *Illinois* Department of Corrections.  (Petition, PageID 47).  *Compare* https://www2.illinois.gov/idoc/facilities/Pages/westernillinoiscorrectionalcenter.aspx (accessed June 21, 2022) and https://www.drc.ohio.gov/institutions (accessed June 21, 2022).  McElroy alleges that he participated in programs while in that Illinois institution.  (Petition, PageID 47).  Thus, it appears that McElroy was not "a person confined in a state correctional institution" as defined in Ohio law when he participated in the programs.  Ohio Revised Code 2967.193(A)(1), 2967.01(A).  Such is implied in the ODRC's refusal to credit him for these programs because "he is not being housed in the State of Ohio."  (Petition, PageID 47.)

In addition, it is not simply *any* educational or rehabilitative program for which such an eligible person can receive credit; credit is available only for those "program[s] developed by the department with specific standards for performance by prisoners."  Ohio Revised Code 2967.193(A)(1).  More specifically,

> The director or designee shall issue and maintain a list containing the specific name of each approved program at each institution. Programs may be added or deleted according to a procedure approved by the director. <u>No inmate shall be awarded earned credit for participating in any program not specifically named on the director's list.</u>

Ohio Admin. Code 5120-2-06(B) (emphasis added).  *See also* ODRC Policy No. 80-INC-02 ("Earned Credit for Productive Program Participation"), Section VI.A.1 ("Under Administrative Rule 5120-2-06, Earned Credit for Productive Program Participation, earned credit may only be awarded for participation in programming that has been approved by the Director of the ODRC from the listing of eligible programs in the above-referenced Administrative Rule."), available at https://drc.ohio.gov/policies/incentive (accessed June 23, 2022).  Here, McElroy has not alleged that he has completed any program included on the director's list of approved programs.  *See*

6

Policy 80-INC-02, Section VI.A.4.d ("Under no circumstances shall an incarcerated individual be awarded earned credit for participating in a program not specifically named on the Director's approved list.").

Successful participation requires that an inmate "enter the program on or before the first program day of the month and continue participating in the program through the last program day of the month" to earn credit for the month. Ohio Admin. Code 5120-2-06(O). An inmate must also "attend seventy-five per cent of the scheduled program/job sessions for any month" to earn credit. Ohio Admin. Code 5120-2-06(N). An inmate will not earn credit for any month in which he has an unexcused absence, or "exhibits behavior considered to be a hindrance to the productive participation of the inmate or others, such as excessive noise, disruption, sleeping on assignment or tardiness." Ohio Admin. Code 5120-2-06(Q), (R). There is also a maximum amount of credit that can be earned. Ohio Admin. Code 5120-2-06(Z). Finally, earned credit can be withdrawn (Ohio Admin. Code 5120-2-06(S)) or forfeited (Ohio Admin. Code 5120-2-06(T)) for rule violations. *See also* ODRC Policy No. 80-INC-02, Section VI.F.

In his Petition, McElroy alleges only that he "has participated in numerous educational/ rehabilitative programs" since entering the Illinois Department of Corrections. (Petition, PageID 47.) He does not allege that these programs were approved by the Director of the ODRC, or that he attended seventy-five percent or more of the sessions, and had no unexcused absences, or that no earned credit was subject to forfeiture or withdrawal. And, as relevant to this Court's analysis under *Bailey*, he does not argue that "but for" the alleged violation he would be granted release. *See Bailey*, 951 F.3d at 346 ("Ohio does not give inmates a right to parole; the Board has authority to grant or deny a candidate's application at its discretion. As a result, [petitioner] cannot argue that, but for the allegedly inaccurate description [in his parole record], the Board

7

would grant him parole.") (internal citation omitted). Given the contours of the earned credit statute, rule, and policy sketched out above, it plainly appears that McElroy could not make such an argument.

Under *Bailey,* a petitioner's failure (or inability) to link the alleged violation with their custody status takes the claim outside Section 2254. 952 F.3d at 346.[3] Accordingly, the Undersigned concludes that McElroy "is not entitled to relief in the district court" and that his claim under § 2254 should be dismissed.

## III. Certificate of Appealability

A state prisoner seeking federal habeas corpus relief is not automatically entitled to appeal a district court's decision denying relief unless the district court issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c). A district court must issue or deny a COA "when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2254 Cases.

To be entitled to a COA, a petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to

---

[3] The majority in *Bailey* appeared to leave open the possibility that such a claim might exist under 28 U.S.C. § 2241, and also explicitly found that an action under 42 U.S.C § 1983 was not foreclosed. *Bailey*, 951 F.3d at 347. *See also Bradley v. Shoop*, No. 20-3897, 2021 WL 688859, at *2 (6th Cir. Jan. 8, 2021) (citing *Bailey*) (caselaw interpreting § 2241 "does not control" decisions under § 2254). The Undersigned makes no determination about the propriety of either such kind of claim on the facts presented. *See generally Wilkinson v. Dotson*, 544 U.S. 74, 78, (2005), quoting *Preiser v. Rodriguez,* 411 U.S. 475, 489 (1973)) ("a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement' . . . [but] must seek federal habeas corpus relief (or appropriate state relief) instead."); *Szabo v. Thompson*, No. CIV A 3:08-cv-P632, 2009 WL 1046004, at *3 (W.D. Ky. Apr. 20, 2009) (citing *Greene v. Tenn. Dep't of Corr.*, 265 F.3d 369, 371 (6th Cir. 2001)) ("A petition for writ of habeas corpus under 28 U.S.C. § 2254 is the exclusive vehicle for a prisoner contesting loss of good-time credit."); *Nash v. Bradshaw*, No. 1:13-cv-1890, 2015 WL 5057638, at *6 (N.D. Ohio Aug. 25, 2015) (petitioner's "challenges [to] the state's failure to give him jail time credit under Ohio law . . . is not cognizable as it is not the province of a federal habeas court to reexamine state court determinations on state law questions."); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state . . . crediting statutes is a matter of state concern only" and not cognizable in habeas corpus).

proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Sixth Circuit has also cautioned that "a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect." *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020).

The issue that McElroy raises in his Petition is unusual, and the precise question answered above by analogy to the 2020 *Bailey* decision has not—to the Undersigned's knowledge—previously been answered. The majority opinion in *Bailey* itself elicited a dissent surrounding the "but for" language used by the majority. 951 F.3d at 347 ("The majority holds that relief pursuant to 28 U.S.C. § 2254 is unavailable to a state prisoner who cannot show that 'but for' an alleged constitutional violation, there 'would' be a change in custody status. *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011), says otherwise."). How *Bailey* impacts habeas claims concerning other types of sentence credits outside the parole context is unclear. Thus, while the Undersigned is of the view that *Bailey* does control the outcome of this case, reasonable jurists could debate the issue. The Undersigned would therefore **RECOMMEND** that the Court issue a COA to allow McElroy to pursue an appeal on this question.

### IV. Recommended Disposition

Based on all the foregoing, the Undersigned **RECOMMENDS** that:

1. the Court **DISMISS** this action as raising a claim that is not cognizable under § 2254.
2. the Court **DENY** McElroy's pending motions (Doc. 2, 3) as moot.
3. if the Court dismisses McElroy's Petition as not cognizable under § 2254, the Court also **ISSUE** McElroy a certificate of appealability to pursue an appeal, and **CONFIRM** that he may do so *in forma pauperis* under Fed. R. App. P. 24(a)(3).

9

**V.      Notice Regarding Objections to this Report and Recommendation**

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it within **FOURTEEN (14) DAYS** after being served with a copy thereof.  Fed. R. Civ. P. 72(b).  All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections.  The Court may extend the 14-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made.  Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

July 1, 2022                                                                  *s/ Elizabeth A. Preston Deavers*
                                                                     ELIZABETH A. PRESTON DEAVERS
                                                                     UNITED STATES MAGISTRATE JUDGE